## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

| | | |
|---|---|---|
| **CARYN L. JONES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No.: 5:12cv00072** |
| | ) | |
| v. | ) | |
| | ) | |
| **CAROLYN W. COLVIN,**[1] | ) | **By:  Hon. Michael F. Urbanski** |
| **Commissioner of Social Security,** | ) | **United States District Judge** |
| | ) | |
| **Defendant.** | | |

### MEMORANDUM OPINION

This social security disability appeal is before the court for review of the Report and Recommendation issued in this case by the magistrate judge on May 13, 2013, in which it is recommended that plaintiff Caryn Jones ("Jones")'s motion for summary judgment be granted, that the Commissioner's motion for summary judgment be denied, and that this matter be recommitted to the Commissioner for the calculation and payment of benefits. The magistrate judge agrees with the position taken by Jones on appeal that the Administrative Law Judge erred in his consideration of the opinion of Dr. James Worth and his consideration of Jones's daily activities and her medical treatment history. The Commissioner has filed an objection to the Report and Recommendation pursuant to Federal Rule of Civil Procedure 72(b)(2).

The court has reviewed the magistrate judge's report, the objections to the report, and the pertinent portions of the administrative record and, in so doing, made a de novo determination of those portions of the report to which the Commissioner objected. For the reasons set forth

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant.

below, the magistrate judge's recommendation will be rejected in its entirety and the
Commissioner's decision affirmed.

**I.**

Making a disability determination is the Commissioner's job.  The Commissioner is
charged with evaluating the medical evidence and assessing symptoms, signs, and medical
findings to determine the functional capacity of the claimant.  Hays v. Sullivan, 907 F.2d 1453,
1456 (4th Cir. 1990).  In contrast, it is not the job of a reviewing federal court to make
administrative disability decisions.  The court may neither undertake a de novo review of the
Commissioner's decision nor re-weigh the evidence of record.  Hunter v. Sullivan, 993 F.2d 31,
34 (4th Cir. 1992).  Judicial review of social security disability cases is limited to determining
whether substantial evidence supports the Commissioner's conclusion that the claimant failed to
meet her burden of proving disability.  See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.
1966).  Evidence is substantial when, considering the record as a whole, it might be deemed
adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401
(1971), or when it would be sufficient to refuse a directed verdict in a jury trial.  Smith v.
Chater, 99 F.3d 635, 638 (4th Cir. 1996).  Substantial evidence is not a "large or considerable
amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than
a mere scintilla and somewhat less than a preponderance.  Perales, 402 U.S. at 401.  If the
Commissioner's decision is supported by substantial evidence, it must be affirmed.  42 U.S.C.
§ 405(g); Perales, 402 U.S. at 401.

**II.**

Jones applied for disability insurance benefits on December 8, 2008.  Her claim was
denied initially and upon reconsideration.  Jones appeared before Administrative Law Judge

("ALJ") Ethan Chase for an administrative hearing on December 8, 2010.  Jones, represented by counsel, and vocational expert both testified.  The ALJ denied Jones's claim on January 26, 2011.  He found that she had two severe impairments: panic disorder with agoraphobia and bipolar disorder.  R. 14.  The ALJ further found that despite these impairments Jones retained the residual functional capacity to perform a limited range of work.  R. 16.  Jones appealed the ALJ's decision to the Social Security Administration's Appeals Council.  On May 31, 2012, the Appeals Council denied Jones's request for review, rendering the ALJ's decision the final decision of the Commissioner.  R. 1.  This appeal followed.

**III.**

Jones argues that the ALJ erred (1) in his consideration of Dr. Worth's opinion, (2) in his consideration of her daily activities and medical treatment history, and (3) in his assessment of her credibility.  (Mem. in Supp. of Plf.'s Mot. for Summ. J., Dkt. # 13, at 7-13.)  In his report, the magistrate judge agrees with Jones as to her first two assignments of error.  The problem with the report is that it fails to apply the appropriate standard of review and instead reweighs the evidence.  Applying the appropriate substantial evidence standard, the court concludes that the Commissioner's decision must be affirmed.

**A.  The ALJ properly considered Dr. Worth's opinion**

Dr. James Worth, Ed. D., met with Jones on July 21, 2009 for a consultative exam.  R. 231- 41.  He produced a detailed report in which he diagnosed Jones with both bipolar disorder and panic disorder with agoraphobia.  R. 240.  Dr. Worth concluded his report with a medical source statement, which in relevant part states as follows:

> [Jones] could be able to perform most jobs that require average ability to handle the complexity and detail.  She is not now experiencing significant manic or depressive symptoms but is suffering from a panic disorder with agoraphobia.  This will

interfere with her ability to complete an ordinary workday or workweek, perform her duties consistently or maintain regular work attendance.  As indicated earlier, the claimant is not taking any medication at the present time.  Were she to begin taking antianxiety medication, her symptoms of a panic disorder probably could be successfully controlled.  She would need some extra supervision in the work setting.

Currently, [Jones]'s mood is largely stabilized, although she is in a fairly low stress environment.  Panic attacks are her main source of emotional distress.  These would interfere with her ability to interact effectively with supervisors and coworkers.  It is also possible that the stress of working in a competitive work setting could provoke a depressive reaction as it did in 2007.[2]  She is particularly vulnerable to a situation in which there are many coworkers or she must interact with the public.

R. 240-41.  Dr. Worth found Jones's prognosis without medication to be "guarded or poor," but that with medication "her prospects brighten both for controlling bipolar symptomatology and alleviating anxiety."  R. 240.  He concluded that her prognosis was, "with treatment," "at least fair to good."  R. 240.

The magistrate judge stated that "[g]iven the agreement of all of the plaintiff's physicians regarding her diagnosis, the undersigned cannot discern any basis for the [ALJ]'s decision to ignore the limitations which Dr. Worth place on the plaintiff."  (Report & Recommendation, Dkt. # 17, at 7).  In contrast to the magistrate judge's view, the record demonstrates that the ALJ did not ignore Dr. Worth's medical source statement.  Plainly, the ALJ took Dr. Worth's assessment into account as he found both Jones's panic disorder with agoraphobia and her bipolar disorder to be severe impairments—that is, impairments that cause more than minimal work-related limitations.  R. 14.  The ALJ further limited Jones's to "simple, routine, and rote tasks with close

_____

[2] Jones reported to Dr. Worth that she quit her last job in 2007 because "she was moved around and later had her hours cut back, which caused her to become so dissatisfied with the job that she quit."  R. 234.  Dr. Worth believed her quitting to be the result of a depressive episode.  R. 239.  Jones testified at the hearing before the ALJ, however, that she stopped working in 2007 because she "had a huge panic attack at work and the stress of trying to go back and face everybody that [she] worked with just made it too difficult."  R. 34.  Whatever the reason, it is undisputed that Jones stopped working in 2007.

supervision," "low-stress work requiring no fixed production quotas and with only occasional decision making and changes in the work setting," and "only occasional interaction with the public."  R. 16.

In reaching his conclusion that Jones was disabled, the magistrate judge seized on one line from Dr. Worth's medical source statement.  Not only does this selective review of the evidence misapprehend the court's role in reviewing administrative disability decisions, it is not true to the entirety of Dr. Worth's assessment.  To be sure, Dr. Worth states that Jones's panic disorder with agoraphobia "will interfere with her ability to complete an ordinary workday or workweek, perform her duties consistently[,] or maintain regular work attendance."  R. 240. Taken out of context, that one line may well support the conclusion urged by Jones.  But that is not all that Dr. Worth's statement says.  In the complete passage, set out on pages 3-4 of this opinion, Dr. Worth points out that Jones "could be able to perform most jobs that require average ability to handle the complexity and detail;" "is not now experiencing significant manic or depressive symptoms but is suffering from a panic disorder with agoraphobia;" "is not taking any medication at the present time;" and "[w]ere she to begin taking antianxiety medication, her symptoms of a panic disorder probably could be successfully controlled."  R. 240.  Considered in its entirety, therefore, Dr. Worth's medical source statement does not compel the conclusion that Jones is precluded from all work.

Evaluating the entirety of the record, the appropriate inquiry for a reviewing court is whether substantial evidence supports the ALJ's determination that Jones is not disabled.  A diagnosis of a condition itself is insufficient to prove disability.  See Gross v. Heckler, 785 F.2d 1163 (4th Cir.1986).  The ALJ must determine the extent to which a medical problem imposes limitations on a claimant's functional abilities.  Here, the ALJ properly looked to the record as a

whole in making that determination.  The ALJ looked to Dr. Worth's report and correctly noted

that Dr. Worth "did not indicate [] to what extent [Jones]'s symptoms would interfere with [her

work-related] abilities."  R. 21.[3]  The ALJ concluded that "a statement that the claimant's

symptoms would interfere with her ability to work does not mean they would preclude work."

R. 22.  The court agrees.  Indeed, were it otherwise every severe impairment—which by

definition interferes with one's ability to work—would be sufficient to render an individual

disabled.  The social security regulations clearly do not equate a limitation with a finding of

disability.  The ALJ also considered the opinions of the state agency psychological consultants.

R. 22.  Drs. Louis Perrott and Howard Leizer each concluded that Jones had moderate

limitations but retained the capacity for limited work.  R. 61-62, 72-74.  These opinions further

support the ALJ's conclusion that Jones was not completely precluded from work.  Additionally,

the ALJ considered Jones's daily activities and medical treatment history.

### B.  The ALJ properly considered Jones's daily activities

The ALJ noted that Jones reported "tending to her personal care needs, caring for pets,

cooking, cleaning, doing yard work, caring for her son and stepchildren, doing laundry, washing

dishes, doing household repairs, going for walks, driving, shopping, reading, gardening, quilting,

playing computer games, sewing, talking on the telephone, watching television, traveling, going

to out to eat, attending her son's football games, going sightseeing, and going to movies."  R. 20-

21.  The magistrate judge found it "unclear" "how the majority of the activities even relate[] to

[Jones]'s main complaint of disabling agoraphobia."  (Report & Recommendation, Dkt. # 17,

---

[3] Plaintiff argues that "[i]f the ALJ felt Dr. Worth's opinions were unclear, he should have further questioned Dr. Worth about his opinions as it is the duty of the ALJ to fully develop the record."  (Mem. in Supp. of Plf.'s Mot. for Summ. J., Dkt. # 13, at 8.)  However the ALJ has fully discharged this duty so long as "the record is adequate to make a determination regarding a disability claim."  Greco v. Astrue, No. 7:11CV399, 2012 WL 6861354, at *9 (W.D. Va. Dec. 27, 2012) report and recommendation adopted, No. 7:11CV399, 2013 WL 164509 (W.D. Va. Jan. 15, 2013) (quoting France v. Apfel, 87 F.Supp.2d 484, 490 (D. Md. 2000)).  Considered in its entirety, the record in this case was adequate.

at 8).  The ALJ's analysis, however, was not limited to agoraphobia, as Jones was also found to

have bipolar disorder as a severe impairment.  The ALJ had a duty to consider all relevant

evidence of Jones's functional capacity, not only the evidence that related to her "main

complaint."  The magistrate judge further noted that "with respect to the activities that occur[ed]

outside the home," Jones reported performing some of these activities infrequently and

sometimes unsuccessfully.  Id.  The ALJ, however, did not conclude that these activities

indicated that Jones had no limitations.  He concluded that "[g]iven the complaints of disabling

symptoms and limitations, such activities are not limited to the extent one would expect."  R. 21.

Substantial evidence supports this conclusion.  For example, during a therapy session on October

15, 2009, counselor Susan Mayes, M.A. Ed., observed that "[Jones] states that she has

agoraphobia, but she is able to drive to the office and fly on a plane."  R. 250.  Even before she

started receiving treatment, Jones reported to Dr. Worth that she was able to pick up her son

from school "which she ha[d] gotten used to."  R. 238.  Thus, the ALJ did not err in his

consideration of Jones's daily activities in determining the extent of her limitations.

### C.  The ALJ properly considered Jones's medical history

To determine the severity of Jones's limitations, the ALJ primarily relied on the objective

medical evidence of record.  R. 17-20.  He detailed the progress of her treatment, from her

consultative examination with Dr. Worth on July 23, 2009, to her visit with Stephanie RiCharde,

M.A, a counselor with the Rockbridge Area Community Services Board ("RACS"), on

November 2, 2010.  R. 18-20.  The ALJ noted both Jones's reports of improving symptoms and

the observations of progress by her treatment providers.  R. 20.[4]  He concluded that her treatment

had been essentially conservative and routine.  R. 20.

---

[4] The ALJ found it significant that none of Jones's treating doctors or counselors placed any limitations on her or
stated that she was unable to work.  R. 21.  The magistrate judge commented that had such an opinion been

7

There is substantial evidence to support the perspective that Jones, upon receiving medication for her mood disorder along with therapy for anxiety, was able to adequately manage her condition such that she was capable of a limited range of work.  Jones began receiving therapy from RACS on September 22, 2009, and continued receiving therapy there throughout the relevant period—though staff changes caused her to switch counselors.  Jones also began seeing Dr. Philip Hirsh, a psychiatrist, on November 5, 2009.  Once Jones was given a prescription for Lamictal for her mood disorder, she quickly reported significant improvement. As the ALJ noted, Jones reported feeling better, feeling stable, and feeling "like a normal person" on Lamictal.  R. 253, 254, 264.  By March 15, 2010, Jones was "feeling much better" and, with her husband out of town, she was "forced to drive the car and get out of the house to care for herself."  R. 262.  On April 7, 2010, Ms. Hayes observed that Jones was "doing quite well, markedly improved."  R. 261.  Jones was "stable on medication and very satisfied with services."  R. 261.  Jones reported difficulties with situational stressors—family matters and the death of her cat—in July of 2010.  She reported an aborted shopping trip due to her social phobia to Ms. RiCharde on November 2, 2010.  R. 266.  Jones also testified before the ALJ that her Lamictal prescription had ceased being effective.  R. 42.  The ALJ, however, noted that "treatment records do not corroborate this allegation and document no such complaints made to her counselor."  R. 20.  In sum, while there is evidence that could support a different conclusion, there is clearly substantial evidence within the medical record to support the ALJ's decision.

The magistrate judge found that the ALJ inappropriately considered Jones's lack of hospitalizations or medication changes.  The magistrate judge first states that "agoraphobia is not

---

rendered, the ALJ "likely would have dismissed [it] on the basis that the issue is reserved to the Commissioner." (Report & Recommendation, Dkt. # 17, at 7).  To the contrary, functional limitations imposed by medical providers are important factors which the ALJ should consider, and there is no basis for the magistrate judge's speculation that the Commissioner would reject such evidence out of hand.

a condition which routinely requires hospitalization." (Report & Recommendation, Dkt. # 17, at 9). Even assuming the court had the ability to determine on its own the common treatment for a given ailment, the fact that it is not routine does mean that a lack of hospitalization is immaterial. An absence of severe flare-ups in a claimant's condition is certainly relevant in determining its overall severity.

The magistrate judge then notes that Lamictal was prescribed to Jones to treat her bipolar disorder, not her agoraphobia and anxiety. Again, the ALJ was not discussing only one of the two severe impairments he found Jones to have. It would have been reversible error for the ALJ to only discuss Jones's agoraphobia. Furthermore, the record indicates that the treatment for these two issues was linked. When Jones established care with Dr. Hirsh, he stated that she would not do well in her therapy at RACS if she did not have her moods under better control. R. 248. Thus, Jones's success in therapy for anxiety and agoraphobia was linked to her mood control, which is, in fact, provided by her medication. As such, the ALJ clearly did not err in considering all of Jones's pertinent medical history, including her lack of hospitalizations and medication changes.

Finally, the magistrate judge finds the ALJ erred in his consideration of a five year period in which Jones did not seek any mental healthcare. The magistrate judge concluded that the ALJ did not consider Jones's inability to afford treatment, the side effects of her medication, medical advice that there is no effective treatment, or Jones's structuring of her routine to minimize symptoms. (Report & Recommendation, Dkt. # 17, at 9-10). Jones did report to both Drs. Worth and Hirsh that she stopped taking her prescribed medication in 2003 or 2004 due to its side effects. R. 236, 246. It is also true that she has not been prescribed anti-anxiety medication. However, there is no explanation as to why Jones ceased all treatment, including therapy, for this

extended period of time.  The ALJ did not err in considering this large gap in Jones's treatment history.

At the end of the day, the ALJ found that "it is significant that none of the claimant's doctors or counselors has placed limitations on the claimant or stated that she is unable to work. Given the claimant's allegations of totally disabling symptoms, one would expect to see some indication in the treatment records of restrictions placed on the claimant, yet a review of the record in this case reveals no such restrictions recommended by any treating source."  R. 21. The court's evaluation of the entirety of the administrative record, under the appropriate standard of review, compels the court to conclude that substantial evidence supports the Commissioner's decision.

## IV.

The magistrate judge did not reach Jones's final argument—that the ALJ improperly found her to be less than fully credible.  (Mem. in Supp. of Plf.'s Mot. for Summ. J., Dkt. # 13, at 7-11.)  "Credibility determinations are emphatically the province of the ALJ, not the court, and courts normally should not interfere with these determinations."  Greenway v. Astrue, No. 6:12CV00005, 2013 WL 4929931, at *14 (W.D. Va. Sept. 12, 2013) (collecting cases).  So long as the ALJ's credibility determination is support by substantial evidence, it should be upheld. See Johnson v. Barnhart, 434 F.3d 650, 658–59 (4th Cir.2005) (per curiam) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)).  As outlined above, Jones's treatment notes, her reported daily activities, and the medical opinions of record all contain substantial evidence to support the ALJ's conclusion that Jones's impairments were not as severe as alleged.

**V.**

In sum, considering the administrative record as a whole, substantial evidence supports the Commissioner's decision.  To that end, an Order will be entered rejecting the Report and Recommendation of the magistrate judge in its entirety, and affirming the Commissioner's decision.

The Clerk is directed to send a certified copy of this Memorandum Opinion to counsel of record.

Entered:  November 8, 2013

*/s/ Michael F. Urbanski*

Michael F. Urbanski
United States District Judge